UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

TAKE-TWO INTERACTIVE
SOFTWARE, INC., a Delaware                            No. 06 Civ. 05279 (LTS)
corporation,

                    Plaintiff,

    -v-

RYAN A. BRANT, JAMES H. DAVID, JR.,
LARRY MULLER, and KELLY G. SUMNER

                    Defendants.

-----------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act. For the following reasons, the motions are granted in part and denied in part.

### BACKGROUND AND PROCEDURAL HISTORY

The parties' familiarity with the proceedings and submissions to date is assumed. This section recites only those facts relevant to the adjudication of the instant motions. Facts alleged in the Amended Complaint are taken as true for the purposes of this motion practice.

On July 12, 2006, Richard Lasky ("Lasky") commenced a shareholder derivative action against Take-Two Interactive Software, Inc. ("Take-Two"). The Lasky action was consolidated with a second derivative action brought by Raeda Karadsheh ("Karadsheh). (See Docket Entry No. 7.) A verified consolidated shareholder derivative complaint (the "Derivative Complaint") was filed on February 9, 2007. (See Docket Entry No. 19.) Take-Two's Special

Litigation Committee ("SLC") evaluated the claims and moved to dismiss the Derivative Complaint as against nineteen of the twenty-three defendants and to assign to Take-Two the claims against the remaining four defendants; Ryan A. Brant ("Brant"), Larry Muller ("Muller"), Kelly G. Sumner ("Sumner") and James H. David, Jr. ("David") (collectively the "Defendants"). The SLC's motion was granted on April 21, 2009. (See Docket Entry No. 113.) On June 15, 2009, Take-Two filed an amended complaint (the "Amended Complaint").

This action revolves around the alleged backdating of stock option awards to the Defendants and others. Backdating is the practice of granting an option to purchase the stock of a corporation at an exercise price lower than the fair market value of the stock on the date of the grant, thus providing the recipient with an immediate profit. (Am. Compl. ¶ 17.) Take-Two adopted Stock Option Plans (collectively, the "Plans") in 1997 and 2002. (Id. ¶ 12.) The Plans were administered by Take-Two's Board of Directors through a two-person committee. (Id. ¶ 13.) Brant is the only Defendant to have served on that committee; he "effectively ran and controlled the operations of Take-Two." (Id. ¶ 8.) Both Plans expressly provided that the exercise price of an option was not to be less than the fair market value of Take-Two's common stock on the date the option was awarded. (Id. ¶ 14.)

The Amended Complaint alleges that the Defendants served in the following capacities; received backdated option awards during the following date ranges;[1] and signed the following publicly filed, allegedly false, statements:

> Brant – Served as CEO from 1993 – 2001 and as Chairman of the Board of Directors from 1993-2004; received option grants from May 5, 1997 – December 1, 2004 (Id. ¶

---

[1] The Amended Complaint includes a chart indicating the date of the grant, the number of shares, the exercise price and Take-Two's price per share on the grant date as to each Defendant.

21.) Signed Form 14A filings from April 1998 – April 2003 and proxy statements from 1997 – 2003.  (Id. ¶¶ 46-47.)

David – Served as CFO from July 2000 – December 2001; received option grants from April 3, 2000 – August 2, 2001 (Id. ¶ 28.)  Signed Form 14A filings from October 2000 – June 2001 and proxy statements from 2000 – 2001.  (Id. ¶¶ 50-51.)

Muller – Served as CFO from January 1999 – April 2000, COO from April 2000 – February 2001, Exec. VP of Operations from October 2001 – January 2002; received option grants from March 1, 1999 – October 3, 2001 (Id. ¶ 25.)  Signed Form 14A in April 1999 and a proxy statement in 1999.  (Id. ¶¶ 52-53.)

Sumner – Served as a Director from December 1997 – January 2003, CEO from February 2001 – January 2003; received option grants July 28, 1997 – April 15, 2002 (Id. ¶ 31).  Signed Form 14A filings from April 1998 – May 2002 and proxy statements from 1997 – 2002.  (Id. ¶¶ 48-49.)

On January 22, 2002, Take-Two's general counsel sent an e-mail to Sumner, Paul Eibeler ("Eibeler"), Albert G. Pastino ("Pastino"), Barry Rutcofksy ("Rutcofsky") and Patti Tay ("Tay") regarding the pricing of stock options.  The e-mail message included the following statement:  "In this light, it is worth mentioning that options must be granted at an exercise price equal to 100% of the fair market value of the underlying common stock on the date of grant.  Any below market issuance will result in a charge to earnings on the date of grant." (Decl. of Joseph C. Schoell, Ex. B ("Kasowitz Rpt.") at Ex. G.[2])  From 1997-2003, Take-Two allegedly failed to reflect the expenses resulting from the alleged backdating scheme in its financial filings with the SEC and in the financial information publicly disseminated to its shareholders and prospective shareholders.

---

[2]   The Court notes the Defendants' arguments regarding Take-Two's reliance on the Kasowitz Report in connection with this motion practice.  The Report issued by the Special Litigation Committee and "supporting materials filed with the Court in this matter on September 7, 2007," are specifically referenced in the Amended Complaint. (Am. Cmplt. § 39.)  The Kasowitz Report was filed with the Court on September 7, 2007. (Am. Compl. ¶¶ 1, 39, docket entry nos. 68-69.)  The Court may properly consider its content in connection with this motion practice.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

(Id. ¶ 36.) This failure was a violation of SEC rules and regulations as well as of generally accepted accounting principles. (Id.) As a result of the alleged backdating scheme, Take-Two was forced to restate and lower its earnings by $54.6 million for the period of 1997-2005. (Id. ¶ 37.) The SLC conducted an investigation of Take-Two's backdating practices and subsequently released its September 5, 2007, Report of the Special Litigation Committee of Take-Two Interactive Software, Inc. (the "SLC Rpt," Decl. of Joseph C. Schoell, Ex. A). The SLC Report concluded that at least eight executives and directors charged in the derivative complaints did not receive backdated options and had not participated in the alleged backdating scheme. (SLC Rpt. at 37.) The Kasowitz Report, which was prepared for the SLC, concluded that Tay, one of the recipients of the general counsel's 2002 e-mail, was a "central figure" in the alleged backdating scheme. (Kasowitz Rpt. at 33.) Eibeler and Rutcofsky were dismissed as defendants following the SLC's determination that they had received backdated options but had not actively engaged in backdating of Take-Two options. (See Docket Entry No. 113; SLC Rpt. at 44, 46.) Pastino was not charged with receiving backdated options or participating in the scheme. The SLC alleges that "Take-Two" first learned about its historical backdating practices after a Wall Street Journal article published in March 2006 detailed the practice and a subsequent June 2006 New York Times article specifically identified Take-Two's option awards as suspicious. (SLC Report at 26, n.9.)

        The Amended Complaint asserts claims for violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n, and SEC Rule 14a-9, violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 and for breach of fiduciary duties and/or unjust enrichment under Delaware law. Defendants move to dismiss the Amended Complaint on the grounds that the claims asserted against them are time barred, that the Amended Complaint fails to meet the pleading particularity requirements of Federal

Rule of Civil Procedure 9(b) and of the Private Securities Litigation Reform Act, and that the Amended Complaint fails to state a cause of action upon which relief can be granted.

## DISCUSSION

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When deciding a motion to dismiss the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). The Court may also consider matters subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Here, the Amended Complaint specifically incorporates by reference a number of documents, including the SLC Report and the Kasowitz Report. (See note 2 supra.)

*The Statute of Limitations*

The parties agree that the timeliness of Take-Two's claims should be determined by reference to the July 12, 2006, filing date of the original derivative complaint. Defendants contend that the claims asserted in the Amended Complaint are barred under the applicable statutes of limitations and/or repose, based on the passage of time since the underlying events and on the 2002

warning from Take-Two's general counsel, which Defendants argue put Take-Two on at least constructive notice of improper backdating. Take-Two, in opposing this prong of the motions, argues that the claims are timely because the company made backdated option grants through 2004 and made misrepresentations concerning the financial impact of the options in 2005. Take-Two also asserts that the company should not be held to have gained knowledge of the wrongful backdating practices based on the 2002 e-mail sent by the general counsel to Defendant Sumner and other then-members of the company's management, and that the company only learned of the backdating practices through media reporting in 2006.

The statute of limitations is an affirmative defense on which the defendant bears the burden of proof. See Fed. R. Civ. P. 8(c)(1); Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995). "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Id. Dismissal is appropriate, however, "only if a complaint clearly shows the claim is out of time," Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999), and thus the complaint's "survival of a Rule 12(b)(6) motion to dismiss on statute of limitations grounds requires only allegations consistent with a claim that would not be time-barred." Id. at 251. See also Arnold v. 1199 SEIU, 09 Civ. 5576 (DLC), 2009 U.S. Dist. LEXIS 116579 (S.D.N.Y. Dec. 15, 2009).

Take-Two asserts claims under Sections 10(b) and 14(a) of the Exchange Act. The acts complained of occurred during the course of an alleged scheme lasting from 1997 through 2005. Prior to July 30, 2002, the limitations periods for claims brought under §§ 10(b) and 14(a) consisted of a one-year statute of limitations and a three-year statute of repose. On July 30, 2002,

the Sarbanes-Oxley Act ("SOX") was enacted.  Pub. L. No. 107-204, 116 Stat. 745.  SOX extended the limitations and repose periods for Section 10(b) claims to two and five years respectively.  Id. § 804(a); 28 U.S.C. § 1658(b).  The extended statutes of limitation and repose in SOX apply to proceedings commenced after SOX's enactment date of July 30, 2002, provided the claims were not time-barred as of that date under the prior law.  Plymouth County Ret. Ass'n v. Schroeder, 576 F. Supp. 2d 360, 375 (E.D.N.Y. 2008).  The SOX extensions do not apply retroactively to revive claims that would otherwise be time barred.  In re Enter. Mortgage Acceptance Co., LLC Sec. Litig., 391 F.3d 401, 411 (2d Cir. 2004).  The extended limitations and repose periods do not apply to Section 14(a) claims, which remain subject to the one-year limitations and three-year repose periods.  15 U.S.C. § 78n; In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 198 (S.D.N.Y. 2003).

   A statute of limitations provides an affirmative defense if the plaintiff has failed to bring suit within a specified period of time after its claims accrued.  Stuart v. American Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998).  Statutes of limitations may be subject to tolling principles.  Id.; see also P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 102-03 (2d Cir. 2004).  A statute of limitations is "[a] law that bars claims after a specified period." Black's Law Dictionary 1450 (8th ed. 2004).  It is generally subject to a "discovery rule," meaning that it does not begin to run until the plaintiff is aware (or should be aware) of his claim.

   By contrast, a statute of repose extinguishes a plaintiff's cause of action after the passage of a fixed period of time, usually measured from one of the defendant's acts.  See P. Stolz Family P'ship L.P., 355 F.3d at 102-03.  A statute of repose is "[a] statute barring any suit that is brought after a specified time since the defendant acted." Black's at 1451.  Here, where the relevant securities statute provides both a short, discovery-based limitations period and a longer

statute of repose, the repose period is a cutoff that is not subject to tolling principles.  Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991).

Thus, Section 10(b) claims accruing prior to July 30, 2002, must generally have been brought within one year of the discovery of the violation and in no event more than three years after the date of the violation.  Section 10(b) claims accruing after July 30, 2002, must be brought within two years of the discovery of the violation and in no event more than five years after the date of the violation.  28 U.S.C. § 1658(b)(1), (2).  Any claim made pursuant to Section 14(a) must be brought within one year of the discovery of the violation and in no event more than three years from the issuance of the proxy statement at issue.  Stoll v. Ardizzone, No. 07 Civ. 00608 (CM), 2007 WL 2982250, at *2 (S.D.N.Y. Oct. 9, 2007).

Take-Two bases its Section 10(b) claims on both the awards of the allegedly backdated options and on alleged misrepresentations concerning the option awards made in publicly filed documents.  The statute of repose for claims based on the awards of the backdated options begins to run on the date of the grant.  United States v. Treacy, No. 08 Cr. 0366 (RLC), 2009 WL 47496 *2 (S.D.N.Y. Jan. 8, 2009); In re Comverse Technology., Inc. Sec. Litig., 543 F. Supp. 2d 134, 155 (E.D.N.Y. 2008).  The statute of repose for claims based upon misrepresentations begin to run on the date of the alleged misrepresentation.  In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 202 (3d Cir. 2007).

The current five-year Section 10(b) statute of repose renders Take-Two's Section 10(b) claims premised on the receipt of option grants untimely as to grants made prior to July 12, 2001.  The Amended Complaint alleges, however,  that each defendant was also awarded backdated options after July 12, 2001, as follows:

>> Brant – August 2, 2001; February 19, 2002; July 16, 2002; May 30, 2003; October 5, 2003; December 1, 2004 (Am. Compl. ¶ 21.)
> Muller – October 3, 2001 (Id. ¶ 25.)
> David – August 2, 2001 (Id. ¶ 28.)
> Sumner – August 2, 2001; April 15, 2002; August 5, 2002 (Id. ¶ 31,32.)

These post-July 12, 2001 grants are within the five-year statute of repose.

Defendants argue that Take-Two's claims with respect to these post-July 2001 option grants are nonetheless untimely under the discovery-based two-year statute of limitations because, as the Kasowitz Report discloses, Take-Two's general counsel highlighted the option backdating issue in the 2002 email to management members. Defendants point out that the statute of limitations begins to run once a plaintiff is put on either actual notice or constructive notice of the facts giving rise to his claim. Menowitz v. Brown, 991 F.2d 36, 41 (2d Cir. 1993). Dismissal of the claims as to the post-July 2001 grants would be inappropriate at this stage because, based on the allegations of the complaint (including for this purpose the SLC and Kasowitz Reports) it is far from clear that application of the statute of limitations, rather than the statute of repose, would be appropriate. Defendant Sumner himself was one of the five recipients of the e-mail at issue. (Kasowitz Rpt. at 16, see also Ex. G to Kasowitz Rpt.) Of the remaining four recipients; three received backdated option awards (Eibeler, Rutcofsky and Tay), two were named as defendants in at least one derivative complaint (Eibeler and Rutcofsky) and the final recipient, Pastino, was affiliated with Take-Two for only "a short time." (SLC Rpt. PP. 42-46, Kasowitz Rpt. at 16.) Take-Two alleges that, while these individuals may have been alerted to "concerns" about the company's option awards program in 2002, "Take-Two" first learned of problems with the Company's historical option grant process in 2006. (SLC Rpt. At 25-26.)   Defendants' motions

will be therefore denied insofar as they seek the dismissal of Section 10(b) claims based on option grants awarded after July 12, 2001, without prejudice to litigation of the applicability of the two-year statute of limitations at a later stage of these proceedings based on a more fully-developed record.

        Take-Two asserts that all of its misrepresentation-based Section 10(b) claims are timely because misrepresentations concerning the financial impact of the backdated option grants continued into 2005.  Take-Two cites Plymouth County Ret. Ass'n v. Schroeder, 576 F. Supp. 2d 360 (E.D.N.Y. 2008) as support for this proposition.  In Plymouth County the plaintiff asserted claims under Section 10(b) relating to a backdating scheme.  Observing that "the plaintiff relies on a form of equitable tolling or continuing violation theory, without expressly saying so," id. at 376, the Plymouth County Court held that the plaintiff's Section 10(b) claims regarding misrepresentations as to the options were timely because the last such misrepresentation had allegedly been made within the applicable period of repose.  Id. at 378 (citing In re Dynex Capital, Inc. Sec. Litig., No. 05 Civ. 1897 (HB), 2006 WL 314524, at *5 (S.D.N.Y. Feb. 10, 2006) (claims not time-barred where a "plaintiff alleges that the misrepresentations contained in the offering documents were followed by additional materially false statements regarding the same subject matter."))  Take-Two appears to argue that its Section14(a) claims should also be permitted to survive based upon this last misrepresentation made theory, although it cites no precedent for that proposition.

        Take-Two's reliance on Plymouth County's last-misrepresentation approach to render timely all of the Defendants' alleged misrepresentations on the basis of the 2005 proxy statement is misplaced.  Unlike in Plymouth County and other cases in which the running of the

statute of repose has been calculated from the date of the last misrepresentation (see cases cited in In re Zoran Corp. Derivative Litig. 511 F. Supp. 2d 986, 1014 (N.D. Cal. 2007)), the alleged misrepresentations upon which Take-Two relies were not made by a single entity speaking as such or by a static group of speakers acting in concert.  Rather, some of the Defendants whom Take-Two seeks to hold liable for misrepresentations were only affiliated with Take-Two for short periods that did not overlap, and none was affiliated with Take-Two when the 2005 representation was made.

Take-Two does not proffer a factual predicate for computing the five-year Section 10(b) statute of repose from the misrepresentations that were allegedly made in 2005.  None of the Defendants is alleged personally to have made any misrepresentations after April of 2003, and there are no allegations that Defendants participated in any of the later misrepresentations cited in the Amended Complaint.  Accordingly, even if a last-misrepresentation or equitable theory can be viable in connection with Section 10(b) claims, the Amended Complaint provides no basis for finding that all of the Section 10(b) claims that are asserted here survive the statute of repose. Take-Two does, however, allege that two of the Defendants made misrepresentations that continued into the period covered by the five-year statute of repose:  Brant is alleged to have signed Form 14A filings from April 1998 through April 2003, as well as proxy statements from 1997 through 2003; and Sumner is alleged to have signed Form 14A filings from April 1998 through May 2002 and proxy statements from 1997 through 2002.  Its last-misrepresentation theory is thus potentially viable to preserve all of Take-Two's Section 10(b) misrepresentation claims as to these two Defendants.  The last-misrepresentation theory is not universally accepted in connection with Section 10(b) claims, however.  Like the court in Comverse Technology, this Court prefers to await further development of the record and of the parties' legal positions on this issue before making any

determination as to whether Take-Two can pursue claims based on pre-July 2001 representations by Defendants Brant and Sumner.  See Comverse Technology, 543 F. Supp. 2d. at 155.  Accordingly, Defendants' motions to dismiss will be denied insofar as they seek dismissal of Take-Two's misrepresentation-based Section 10(b) claims against Defendants Brant and Sumner, without prejudice to litigation of the limitations issue at a later stage of the case.

Plaintiff's effort to invoke the last-misrepresentation principle in connection with the Section 14(a) proxy statement claims is unavailing as a factual matter.  The Complaint alleges that the last proxy statement signed by *any* of the Non-dismissed Defendants was issued in April of 2003, more than three years before the filing of the original derivative action and therefore outside of the Section 14(a) repose period.  Accordingly, all claims made pursuant to Section 14(a) must be dismissed as time barred under the three-year statute of repose.

*Failure to Plead Securities Fraud Claims With Particularity Under 9(b) and the PSLRA*

To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter, i.e., an intent to deceive or defraud; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

Securities fraud cases are subject to heightened pleading requirements.  Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(b).  A securities fraud complaint based on misstatements "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Hall v. Children's Place Retail Stores,

Inc., 580 F. Supp. 2d 212, 224 (S.D.N.Y. 2008).  The Private Securities Litigation Reform Act ("PSLRA") further requires that in a securities fraud case alleging a material misrepresentation or omission, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. §78u-4(b)(1).  The PSLRA also requires that, in cases where a particular state of mind on the part of the defendant is required, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" - - here, scienter.  15 U.S.C. § 78u-4(b)(2); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (U.S. 2007).

    To qualify as a "strong inference," the inference of scienter must be "more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Tellabs, 551 U.S. at 314.  The requisite inference of scienter can be supported by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness.  Novak, 216 F.3d at 307.  Recklessness is defined as "at the least, . . . an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  Id. at 308-09 (internal quotation marks, citation, and alteration omitted).  The Second Circuit recognizes at least four circumstances that may give rise to a strong inference of scienter: where the complaint sufficiently alleges that the defendants (1) "benefitted in a concrete and personal way from the purported fraud;" (2) "engaged in deliberately illegal behavior;" (3) "knew facts or had access to information

suggesting that their public statements were not accurate;" or (4) "failed to check information they had a duty to monitor." ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 199 (2d Cir. 2009) (citing Novak, 216 F.3d at 311).

    The allegations of the Amended Complaint are sufficient to satisfy these heightened pleading requirements with respect to the surviving claims.  Take-Two specifically identifies the allegedly backdated option grants, satisfying the Rule 9(b) particularity requirement for the fraud claim based on option grants.  The factual allegations with respect to each of the Defendants are also sufficient, to satisfy the PSLRA's scienter pleading requirement.  Each is alleged to have received backdated options, thus receiving a concrete, personal benefit that was not available to the company's other shareholders.  The Amended Complaint includes additional relevant factual allegations as to each Defendant as follows.

    David is alleged to have "had significant involvement in the stock option granting process."  (SLC Rpt. at 54.)  Furthermore, as Take-Two's Chief Financial Officer ("CFO") he was tasked with supervising Tay, who played a central role in the alleged scheme.  (Id.)

    Muller "likely. . . engaged in willful misconduct" with respect to Take-Two's backdating practices.  (SLC Rpt. at 56.)  Like David, Muller served as Take-Two's CFO.  He also exchanged e-mails with Tay regarding Take-Two's backdating practices.  (Id., Ex. E and H to the Kasowitz Rpt.) .

    Sumner "knew about and apparently participated in the backdating of options. . ." (SLC Rpt. at 58.)  The Kasowitz Report reached this determination based upon several e-mail exchanges regarding Take-Two's option award program.  (Ex. I, J, S, to the Kasowitz Rpt.) Sumner was also a recipient of the 2002 e-mail from Take-Two's general counsel expressing

concern about the company's option awards and chose not to take any remedial action. (Ex. G to the Kasowitz Rpt.)

Of the Defendants, only Brant sat on the Compensation Committee. The compensation committee "was the only Board committee that, from 1997 through 2001, assumed any administrative functions or responsibilities for granting stock options." (Kasowitz Rpt. at 9.) Brant "effectively ran and controlled the operations of Take-Two." (Am. Compl. ¶ 8.) Brant also participated in several e-mail chains relating to Take-Two's option awards. (Ex. L and M to the Kasowitz Rpt.)

The Court finds that Take-Two has adequately alleged facts supporting the required strong inference of scienter as against each of the Defendants. The Court has considered the other arguments proffered by the Defendants and finds that none warrants dismissal of the Amended Complaint as deficient.

*The State Law Claims*

The statute of limitations applicable to Take-Two's state law claims is three years. Del. Code Ann. tit. 10, § 8106. Delaware courts have found that this statute of limitations can be tolled when defendants engage in "fraud or concealment of the facts which would have disclosed" the wrongdoing. Kahn v. Seaboard Corp., 625 A.2d 269, 276 (Del. Ch. 1993). In light of Take-Two's allegations concerning concealment and discovery of relevant information, it cannot be said that the state law claims are clearly out of time based on the face of the complaint and other integral documents. Accordingly, Defendants' motions are denied to the extent they seek dismissal of Take-Two's state law claims, without prejudice to later litigation of the limitations defense. The

Court has considered the additional arguments relating to the state law claims and finds that none warrants dismissal of those claims.

## CONCLUSION

The motions to dismiss are granted as to all of Plaintiff's Section 14(a) claims, as to all of Plaintiff's Section 10(b) claims against Defendants David and Muller that are based on misrepresentations, and as to Plaintiff's Section 10(b) claims based upon option grants awarded prior to July 12, 2001. The motions to dismiss are denied with respect to the Section 10(b) claims premised on option grants awarded after July 12, 2001, the Section 10(b) claims against Defendants Brant and Sumner based on misrepresentations, and the state law claims. This Order resolves docket entry nos. 140, 143, 146 and 156.

SO ORDERED.

Dated: New York, New York
March 31, 2010

LAURA TAYLOR SWAIN
United States District Judge